**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOSE A. TORRES, SR.,

     Petitioner,

-vs-                                  Case No.   8:16-cv-3194-T-36JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER

     Petitioner, a Florida prisoner, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1).   He subsequently filed an amended petition (Doc. 6) and a second amended petition (Doc. 16).   Respondent filed a response in opposition to the second amended petition (Doc. 22), to which Petitioner replied (Doc. 35).   Upon consideration, the second amended petition will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

     On September 25, 2009, Petitioner was convicted of aggravated battery with a deadly weapon and sentenced to fifteen (15) years in prison (Respondent's Exs. 3-4).   The conviction and sentence were affirmed on appeal on May 6, 2011 (Respondent's Ex. 8).   Petitioner's motion for rehearing was denied on August 9, 2011 (Respondent's Ex. 9).

     On October 5, 2011, Petitioner filed a petition for habeas corpus relief alleging ineffective assistance of appellate counsel (Respondent's Ex. 11).   The petition was denied on November 15, 2011 (Respondent's Ex. 12).

On April 11, 2012, Petitioner filed a petition for a writ of habeas corpus in a state circuit court alleging that the judge who sentenced him was without authority to do so because he "had not been sworn into office" at the time of sentencing (Respondent's Ex. 13). The petition was denied on May 16, 2012 (Respondent's Ex. 15). The order denying the petition was affirmed on appeal on March 20, 2013 (Respondent's Ex. 16), and the appellate court mandate issued on April 15, 2013 (Respondent's Ex. 17).

On November 21, 2012, Petitioner filed a motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure, alleging ineffective assistance of trial counsel (Respondent's Ex. 18). The motion was dismissed on December 17, 2012, after Petitioner moved to voluntarily withdraw it (Respondent's Ex. 20). Petitioner filed another Rule 3.850 motion on December 7, 2012 (Respondent's Ex. 21). While that motion was pending, Petitioner filed a motion to amend the Rule 3.850 motion (Respondent's Ex. 23) and a motion to supplement/amend (Respondent's Ex. 24). Some of the claims in the Rule 3.850 motion were denied on October 11, 2013 (Respondent's Ex. 26), and the remainder of the claims were denied on August 28, 2014 (Respondent's Ex. 27). The order denying the Rule 3.850 motion was affirmed (Respondent's Ex. 29), and the appellate court mandate issued on March 1, 2016 (Respondent's Ex. 31). Petitioner sought certiorari review of the affirmance in the United States Supreme Court (Respondent's Ex. 32) which was denied on October 3, 2016 (Respondent's Ex. 33).

On February 16, 2016, Petitioner filed another petition for a writ of habeas corpus in a state circuit court alleging the trial court lacked subject matter jurisdiction to convict and sentence him (Respondent's Ex. 34). The circuit court transferred the petition to another circuit court (Respondent's Ex. 35), and Petitioner appealed the transfer (Respondent's Ex. 36). The

circuit court to which the petition was transferred then transferred the petition to the circuit court in which Petitioner had been convicted (Respondent's Ex. 38). On April 13, 2016, the petition was dismissed after Petitioner moved to voluntarily dismiss it (Respondent's Ex. 40). On January 23, 2017, the appellate court affirmed the order of the circuit court (in which Petitioner filed the petition) transferring the petition (Respondent's Ex. 41). The appellate court mandate issued on February 20, 2017 (Respondent's Ex. 42).

On November 9, 2016, Petitioner filed his initial petition for a writ of habeas corpus in this Court (Doc. 1). He subsequently filed his amended petition on December 7, 2016 (Doc. 6), and his second amended petition on March 28, 2017 (Doc. 16).

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers'

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).   Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."   *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III. ANALYSIS

### A. The second amended petition is timely

Respondent contends that the second amended petition should be dismissed as untimely. The AEDPA created a limitation period for petitions for writ of habeas corpus filed pursuant to 28 U.S.C. §2254.   "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. . . ."   28 U.S.C. §2244(d)(1)(A).   Additionally, "[t]he time during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."   28 U.S.C. § 2244(d)(2).

The parties agree that Petitioner's judgment of conviction became final, and the AEDPA limitation period commenced, on November 7, 2011.   However, because Petitioner filed his petition alleging ineffective assistance of appellate counsel on October 5, 2011 (Respondent's Ex. 11), the limitation period was tolled until that petition was denied on November 15, 2011 (Respondent's Ex. 12).

One hundred forty-seven (147) days of the limitation period elapsed before it was tolled by Petitioner's state petition for a writ of habeas corpus filed on April 11, 2012 (Respondent's Ex. 13).   Although that petition remained pending only until the April 15, 2013 mandate issued on appeal from the denial of the petition (Respondent's Ex. 17), the limitation period did not start again on that date because it was further tolled when Petitioner filed his initial Rule 3.850 motion on November 21, 2012 (Respondent's Ex. 18).   And although the Rule 3.850 motion remained pending only until the March 1, 2016 mandate issued on appeal from the denial of the motion (Respondent's Ex. 31), the limitation period did not start again on that date because it was again tolled when Petitioner filed his second state petition for a writ of habeas corpus on February 16, 2016 (Respondent's Ex. 34).[1]   That petition remained pending until the February 20, 2017 mandate issued on appeal from the transfer of the petition (Respondent's Ex. 42).   Therefore, a total of only 147 days of the limitation period elapsed before Petitioner filed his initial federal habeas petition in November 2016.   Accordingly, the Court finds that the federal habeas petition is timely.

**B. The second amended petition fails on the merits**

**Ground One**:          **Ineffective assistance of counsel. Failure to file motion for immunity in a timely manner.**

Petitioner alleges that in July 2009, he asked his attorney to file a motion for immunity under Florida's "Stand Your Ground" statute, Section 776.032, Florida Statutes.   His attorney, however, did not file the motion until September 2009, after the jury was selected at Petitioner's trial.   The motion was denied as untimely because it was not filed before the jury was selected.

---

[1]  Respondent contends that this state petition did not toll the limitation period because it was not "properly filed," since under Florida law Petitioner was required to file a Rule 3.850 motion rather than a petition for a writ of habeas corpus (Doc. 22, p. 5).   Under the holding in *Thompson v. Sec'y, Dep't of Corrs.*, 595 F.3d 1233 (11th Cir. 2010),

And since Petitioner's attorney believed that the motion would prevail, he was unprepared for trial. Petitioner contends that his attorney's failure to timely file the motion for immunity and to adequately prepare for trial amounted to deficient performance and deprived him of a fair trial. Moreover, in his reply, Petitioner contends that he was prejudiced by his attorney's failure to timely file the motion for immunity because had it been timely filed and denied on the merits, he would have known that he had little chance to prevail at trial and therefore would have accepted the State's offer of 7 years in prison followed by 7 years on probation (Doc. 35, p. 6).

This claim was raised in state court in Ground 2 of Petitioner's March 7, 2014 Rule 3.850 motion (Respondent's Ex. 23, pp. 2-5). In denying the claim, the state post-conviction court stated:

> In Ground 2, Defendant states that his counsel was ineffective because he did not timely file a Motion to Establish Immunity from Prosecution pursuant to Fla. Stat. §776.032. Defendant states that his counsel submitted a motion to the court after jury selection, which argued that Defendant acted in self defense and was therefore immune to prosecution. The Court denied the motion without an evidentiary hearing because the jury had already been sworn in and the trial was set to begin. Defendant alleges that he was misadvised by his defense counsel that the motion "would likely be granted." He further alleges that if the motion had been filed and heard before the September 11, 2009, negotiated plea cutoff, he would have either accepted the State's seven-year offer or entered an open plea to the charge. Defendant alleges, however, that once the "stand your ground" motion was denied, he did not believe he had any option but to proceed with the trial. Defendant further alleges that his defense counsel was ineffective for failing to present an immunity defense to the jury and claims that if counsel had presented an immunity defense, there's a reasonable possibility the results would have been different. Defendant concludes: "I had a right to have the jury instructed on all laws applicable to my defense no matter how flimsy it was, so counsel's performance deprived me of a fair trial."
>
> In its response, the State contends that Defendant's claim "that he would have changed his plea if an immunity motion was denied is not genuine." The State also points out that Defendant's trial counsel "did argue that the defendant's

which is controlling authority, the Court disagrees with Respondent and finds that the petition was "properly filed" for purposes of tolling the AEDPA limitation period.

actions were justified (*the basis for immunity*) to the jury by arguing a claim of self-defense." Citing *Dennis v. State*, 5l So. 3d 456 (Fla. 2010), the State concludes:

> All of the evidence that would have been presented at the immunity motion was presented during the trial. The defendant testified on his own behalf and presented witnesses to support his claim. Additionally, during the trial, the witnesses presented by the state were subjected to cross examination. The motion for judgment of acquittal was denied and the jury determined guilt beyond a reasonable doubt. If any error in not hearing the immunity motion would be considered harmless then any error in failing to timely file an immunity motion cannot have prejudiced the defendant.

The Court agrees with the State. First, in light of the Florida Supreme Court's ruling in *Dennis,* and the evidence supporting the jury's finding of guilt beyond a reasonable doubt in the instant case, the Court finds that, even if defense counsel had filed the "Motion to Establish Immunity from Prosecution" prior to jury selection and even before September 11, 2009, it is unlikely the Court would have granted the Defendant's "Stand Your Ground" motion. Second, as the State points out, Defendant's trial counsel did argue self-defense to the jury. Nevertheless, the jury still found him guilty as charged. Thus, it is also highly unlikely that the overall outcome of Defendant's case would have been altered if defense counsel had filed the "Stand Your Ground" motion sooner.

Third, the Court is not convinced by Defendant's claim that he would have entered a plea rather than proceed with trial upon the denial of his "Stand Your Ground" motion. "Florida courts have recognized claims of ineffective assistance of counsel where an attorney's specifically-described deficient performance results in the loss of a favorable plea offer which the defendant would have accepted. To state a sufficient claim, the defendant must establish: '(1) counsel failed to convey a plea offer or misinformed the defendant concerning the possible sentence he faced, (2) the defendant would have accepted the plea but for counsel's failures, and (3) acceptance of the plea would have resulted in a lesser sentence than was ultimately imposed.'" *Sirota v. Slate*, 95 So. 3d 313,316 (Fla. 4th DCA 2012) (quoting *Morgan v. Slate*, 991 So. 2d 835, 839-40 (Fla. 2008)). <u>The defendant bears the burden of establishing a prima facie claim for an evidentiary hearing, and "the defendant's statement that he or she would have accepted the offer is not alone enough.</u>" *Id*. at 320. Rather, "a court considering allegations that a defendant would have accepted a lost plea offer should make every effort to consider the totality of the circumstances as they existed to the defendant at the time of the offer." *Id*. at 321. Moreover, the Fourth District Court of Appeal has observed, "[m]any postconviction motions seeking to accept lost plea offers will be motivated, at least in part, by the benefit

of hindsight. Having gambled on the possibility of acquittal at trial or that a better offer might be forthcoming, and now knowing the outcome and that the sentence turned out to be more harsh, the defendant will have great incentive to seek to resurrect and accept a lost offer and little disincentive from attempting to do so." *Id*. at 320.

Having reviewed the record, particularly Defendant's trial testimony, the Court finds that contrary to Defendant's assertions, he was more intent on telling his purported self-defense side of the story than entering a plea in this matter. Indeed, in the present case, it appears that Defendant's hindsight is twenty-twenty, and he is now regretting his decision to decline the State's purported seven-year offer and proceed to trial. Accordingly, Defendant has failed to establish that he was prejudiced under the claims in this ground, and it will be denied.

(Respondent's Ex. 27, pp. 5-8) (emphasis in original) (footnotes omitted).

The state court's rejection of this claim on the ground that Petitioner failed to

demonstrate prejudice is not objectively unreasonable. To the extent Petitioner contends that

had his attorney timely filed a motion to dismiss the charge based on Florida's "Stand Your

Ground" law it would have been granted, his contention is both conclusory and self-serving.

Petitioner does not allege or demonstrate how the evidence would have supported a dismissal

based on the defense. Moreover, the contention is belied by the record. The state court has

answered the question of what would have happened had Petitioner's attorney timely filed the

motion—it likely would have been denied. That conclusion is supported by the fact that the

"Stand Your Ground" defense was presented during trial (*see* Respondent's Ex. 2, Vol. IV,

transcript pp. 425-26,443), and the jury clearly rejected it.[2] Consequently, Petitioner has failed

to establish prejudice with respect to this claim. *See Callahan v. Campbell*, 427 F.3d 897, 932

(11th Cir. 2005) (Alabama Court of Criminal Appeals had already answered the question of what

would have happened had counsel objected to the introduction of petitioner's statements based

---

[2] Prior to trial, Petitioner has the burden to establish the "Stand Your Ground" defense based on a preponderance of the evidence, while at trial the State must prove its case beyond a reasonable doubt, including that Petitioner did not

on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection).

To the extent Petitioner contends that his attorney was not prepared for trial because he anticipated that the motion to dismiss based on the "Stand Your Ground" law would be granted, the contention is simply a conclusory statement. Petitioner does not specify here how his attorney was unprepared and how he was prejudiced by the failure to prepare. Moreover, there is nothing in the record that suggests his attorney was not prepared to try the case. His attorney presented a viable defense and called several witnesses in support of the defense, vigorously cross-examined the State's witnesses, and robustly argued Petitioner's case during closing (*See* Respondent's Ex. 2, Vols. I-IV).

Finally, to the extent Petitioner contends that had the motion to dismiss been timely filed and denied on its merits he "would have been ready to accept" the State's plea offer of 7 years in prison followed by 7 years on probation, because he then would have known that there was little chance he would prevail at trial, the state post-conviction court's ruling on the prejudice prong was not an objectively unreasonable application of clearly established law. To establish prejudice in these circumstances, Petitioner must demonstrate a reasonable probability that he would have accepted the plea offer but for his attorney's failure to timely file the motion to dismiss. *See Lafler v. Cooper*, 566 U.S. 156, 164 (2012) (holding that to show prejudice in the context of a foregone guilty plea, a petitioner must show, *inter alia*, that, but for the ineffective assistance of counsel, there is a reasonable probability that he would have accepted the plea offer).

strike the victim in self-defense. *See, Bretherick v. State*, 170 So. 3d 766, 775 (Fla. 2015).

The state court found that Petitioner would not have accepted the plea offer, even if the motion to dismiss had been denied on the merits, because he was intent on telling his version of the story and regretted not having accepted the offer only after he was found guilty and sentenced to 15 years.   This finding is supported by the trial transcript which shows that when Petitioner was first offered only 37 months in prison, he and his wife rejected the offer "based on his feelings of innocence. . . ."   (Respondent's Ex. 2, transcript pp. 474-75).   *See, e.g., Rosin v. United States*, 786 F.3d 873, 878-79 (11th Cir. 2015) (finding defendant failed to sufficiently allege prejudice where the record showed he had consistently maintained his innocence and refused to accept responsibility).   Moreover, Petitioner had a viable defense to the charge of aggravated battery with a deadly weapon because the sword was never found, and he had multiple witnesses whose testimony supported his theory that he acted in self-defense when he punched the victim, Ricky Walton, in his face.   His "after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer."   *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991).   Petitioner's claim therefore fails the prejudice prong of the *Strickland* test because he fails to show a reasonable probability that he would have accepted the 7-year plea offer but for ineffective assistance of counsel.

The state court did not unreasonably apply federal law or make an unreasonable determination of the facts.   Accordingly, Ground One does not warrant federal habeas relief.

**Ground Two:**       **Ineffective assistance of counsel.   Failure to prepare for trial and depose and call witnesses**

In Ground Two, Petitioner contends that his attorney was ineffective because he: 1) was unprepared for trial; 2) failed to prepare the defense witnesses to "testify properly;" and 3) failed

to subpoena for trial the three doctors who had treated Walton to testify that a samurai sword could not have caused Walton's injury. In his reply Petitioner clarifies his claim by asserting that "trial [c]ounsel[] was deficient because he failed to prepare for trial by not deposing the doctors who treated the alleged victim and failed to call the doctor's [sic] to testify." (Doc 35, p. 8). He appears to contend that the three doctors would have testified that "it was unlikely a samuri [sic] sword caused [Walton's] injury." (*Id.*, p. 9).

This claim was raised in state court in Ground 3 of Petitioner's March 7, 2014 Rule 3.850 motion (Respondent's Ex. 23, pp. 5-8). In denying the claim, the state post-conviction court stated:

> In Ground 3, Defendant states that his counsel was ineffective because he was unprepared for Defendant's trial and proceeded to trial after the denial of his "Stand Your Ground" motion without deposing and calling three doctors to testify. According to Defendant, Dr. Kenyon M. Fort, Dr. Fadi E. Saba, and "Professional Health Care of Pinellas" would have testified that "there was no evidence of a sword being used to injure Mr. Walton," the victim in this case, and that the injury "was not caused by a sword" because it "was superficial, a scratch, consistent with [Defendant's] version of the events." Defendant concludes that if the jury heard such proposed medical expert testimony, "the jury would have had reasonable doubt and the results of the proceeding would have been different."

> In order to set forth a facially sufficient claim with regard to defense counsel's alleged failure to depose and call witnesses to testify at trial, a defendant must allege: (1) the identity of the witnesses; (2) their proposed testimony; (3) how the omission of that testimony allegedly prejudiced him; and (4) that the witnesses were available to testify at trial. *See e.g., Nelson v. State*, 875 So. 2d 579 (Fla. 2004). Notably, Defendant fails - despite already having at least one opportunity to amend - to allege that these doctors were even available to testify.

> Nevertheless, the failure to call a witness can constitute ineffective assistance of counsel if the witness may have been able to cast doubt on the defendant's guilt. *Ford v. State*, 825 So. 2d 358, 360-361 (Fla, 2002); *see also Bulley v. State*, 900 So. 2d 596, 597 (Fla. 2d DCA 2004). As the State points out, however, Defendant's present claims are "unsubstantiated conclusory statements claiming that the doctor's testimony would have undermined the credibility of the victim." Although Defendant alleges that the proposed doctors would have "told the jury no sword was used," the Court finds this claim to be speculative at best. The victim testified that he received his injury by Defendant stabbing

him in the face with a sword that looked like a cane, and through his testimony a radiology report describing his injury was introduce[d] into evidence. That Bayfront Medical Center Radiology Report indicates that the victim's left mandible (jaw) was fractured, but contrary to Defendant's claims, the medical findings in that report appear to be consistent with the victim's testimony concerning how he received such injury.

Moreover, defendant's trial counsel specifically objected to the State attorney "fixating" on the extent of the victim's injury, stating that "extensive discussion of [the victim's] medical treatment is not relevant since that has nothing to do with whether there was a deadly weapon." Furthermore, the Court finds defense counsel's closing arguments (as summarized by the State) – suggesting that "the victim's injury had not been sufficiently tied to this incident and that it was reasonable to believe that the victim used this incident as an excuse to explain and treat a pre-existing injury" and pointing out "the conflict between the injury a layperson would expect to see when someone is stabbed in the face by a sword and what the victim's injury actually looked like when photographed by law enforcement" – were employed to cast doubt on the victim's credibility. Based on the combination of defense counsel's objections and closing arguments, the Court agrees with the State's submission that Defendant's trial counsel intentionally "used the lack of medical experts to argue absence of evidence and lack of proof beyond a reasonable doubt." Having reviewed the entire record, including trial transcripts, the Court further agrees that if defense counsel had called the proposed witnesses, assuming they were available, "they would have confirmed that the [victim's] injury could have been caused in the manner described by the victim and would have prevented defense counsel's attack on the victim's credibility and the argument that the victim suffered the injury at a different time."

In light of the foregoing, the Court finds that Defendant was not prejudiced by his counsel's failure to depose and call the witnesses he proposed under this ground. Therefore, it will also be denied.

(Respondent's Ex. 27, pp. 8-10) (alteration in original) (footnotes omitted).

Petitioner has not presented any evidence that the doctors would have testified as he suggests. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted). He therefore cannot obtain relief on his claim. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would

have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)).[3]  Moreover, had Petitioner's attorney deposed the doctors and called them to testify at trial, and had they stated that Walton's injury was consistent with trauma caused by a sword, it would have eviscerated his attorney's strategy to argue the lack of medical evidence showing Walton's injury was consistent with being stabbed with a sword.

Petitioner has failed to demonstrate that the state court unreasonably applied federal law or made an unreasonable determination of the facts.   Accordingly, Ground Two does not warrant federal habeas relief.

**Ground Three**:   **Ineffective assistance of counsel.   Misadvice concerning plea deal and sentencing.**

Petitioner contends that his attorney was ineffective in misadvising him regarding the State's "plea deal" and the sentence he would receive if he proceeded to trial.   Specifically, he alleges that when he and his attorney were discussing "the original plea offer,"[4]  his attorney told him that it was "to [sic] much time," and if he proceeded to trial and lost he "would only get anywhere from 4 to 10 years, because [he] dident [sic] have a lot of points."   (Doc. 16, p. 9). He implicitly contends that had his attorney not told him that he would be sentenced to only 4 to

---

[3] To the extent Petitioner requests "an order for discovery to obtain interrogatories. . .from the doctors. . ." or an evidentiary hearing (Doc. 35, pp. 10-11), the request is denied.   The state court record does not show that Petitioner was diligent in developing the factual basis of this claim in state court.   *See Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir.2002) ("[A] petitioner cannot be said to have 'failed to develop' relevant facts if he diligently sought, but was denied, the opportunity to present evidence at each stage of his state proceedings."); *Williams v. Taylor*, 529 U.S. 420, 435 (2000) ("Diligence for purposes of [§2254(e) (2)] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.").

[4] In his petition and reply, Petitioner fails to specifically identify the plea offer he and counsel discussed.   It is apparent from the record that there were at least two offers, one for thirty-seven months in prison, and one for seven years in prison followed by seven years on probation.   For purposes of this claim, the Court will assume Petitioner and his attorney were discussing the offer of seven years in prison and on probation, since that is the offer Petitioner discussed when he presented this claim in state court (*see* Respondent's Ex. 23, pp. 9-10).

10 years in prison, he would have accepted the plea offer and been sentenced to 7 years in prison, which is less than the 15 years he received after he was convicted.

A similar claim was raised in state court in Ground Four of Petitioner's March 7, 2014 Rule 3.850 motion (Respondent's Ex. 23, pp. 9-10). There, Petitioner alleged that his attorney told him that if he lost at trial he "would *most likely* get about 4 to 10 years." (*Id.*, p. 9) (emphasis added). Accordingly, Petitioner did not exhaust his state remedies concerning the claim he now raises in this Court, that his attorney told him that if he went to trial and lost he "would" receive "anywhere from 4 to 10 years." Because Petitioner has failed to show cause for his default and has failed to make a colorable showing of actual innocence, this claim is procedurally barred from review.

Even if the Court were to liberally construe the claim as alleging that Petitioner's attorney was ineffective in advising him that if he proceeded to trial and lost he would "most likely" be sentenced to 4 to 10 years in prison, the claim would fail on the merits. Petitioner has failed to allege any facts indicating that under the circumstances his attorney's estimate of a 4 to 10-year sentence was unreasonable under Florida's sentencing guidelines.[5] And even if Petitioner's attorney underestimated Petitioner's sentencing exposure, that would not constitute deficient performance. *See United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir.1993) ("A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."). Moreover, when counsel advises his client to reject a plea offer, his performance is not objectively unreasonable

---

[5] "Florida's sentencing guidelines law assigns points for particular offenses and other factors and provides a presumptive sentence range for a defendant's composite score, within which the sentencing judge has unreviewable discretion to fix a sentence without written explanation." *Miller v. Fla.*, 482 U.S. 423, 423 (1987).

unless such advice is made "in the face of overwhelming evidence of guilt and an absence of viable defenses." *Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir.2005). As noted above, Petitioner had a viable claim of self-defense, and the evidence against him, although strong, was not overwhelming. Accordingly, he has failed to demonstrate that his attorney was deficient in advising him to reject the plea offer and that he would most likely receive a sentence between 4 and 10 years in prison.

Even if Petitioner's attorney was deficient with respect to his advice, Petitioner has failed to demonstrate prejudice. As discussed above in Ground One, Petitioner has failed to demonstrate a reasonable probability that he would have accepted the 7 year offer but for his attorney's alleged misadvice.

Petitioner has failed to demonstrate that his attorney rendered deficient performance with regard to his advice not to accept the 7 year offer. He likewise fails to demonstrate prejudice. Accordingly, Ground Three warrants no relief.

**Ground Four:** **Ineffective assistance of trial counsel. Failure to object to admittance of medical records.**

Petitioner contends that his attorney was ineffective in failing to object to the introduction of a CT scan of Walton's face and jaw because the scan was not authenticated by the correct records custodian. He alleges that although Walton's testimony and medical records from Manatee Memorial Hospital (MMH) establish that the scan was taken at MMH, the scan was authenticated by a records custodian from Bayfront Medical Center (BMC) rather than MMH. He argues that the scan was "highly prejudicial" to his case because it bolstered Walton's testimony that he was stabbed with a sword, and if his attorney would have objected to the introduction of the scan, it would not have been introduced into evidence.

This claim was raised in state court in Ground 5 of Petitioner's March 7, 2014 Rule 3.850

motion (Respondent's Ex. 23, pp. 10-14).    In denying the claim, the state post-conviction court

stated:

> In his initial motion, Defendant alleged that his counsel was ineffective for failing to object to the State's admission of medical records. Before dismissing Defendant's initial claim under this ground as facially insufficient, the Court observed that the State, pursuant to Fla. Stat. §90.803(6)(c), gave Defendant notice of its intent to offer the medical records into evidence by means of a Certification of Business Records. Defendant subsequently amended his claims under this ground, further alleging that his trial counsel failed to object on the grounds that the State failed to produce the record custodian to testify or present to the court a certification or declaration by the records custodian, pursuant to Florida Statute Section 90.803(6)(c). In its Response, the State points out that composite "State's Exhibit 1," which was introduced at trial, includes "State's Exhibit 1A," the "Certification of Business Record" that certifies both "State's Exhibit 1B," which is the Bayfront Medical exam, and "State's Exhibit 1C," which is a CD of electronic CT images developed during the victim's exam, as business records.
>
> As for Defendant's claim that the cat-scans were conducted at Manatee Memorial (not Bayfront Medical), State's Exhibits 1A and 1B conclusively refute that claim. Contrary to Defendant's allegations, the State did comply with Section 90.803(6)(c), which "requires a party intending to offer a business record into evidence by means of a certification or declaration to serve written notice of its intent on every party and to make the evidence available for inspection sufficiently in advance of its use so that the opposing party has a fair opportunity to challenge its admissibility." *Deck v. State*, 985 So. 2d 1234, 1239 (Fla. 2d DCA 2008). Moreover, because the State provided a "Certification of Business Record" from the Bayfront Medical Center's Custodian of Records, Defendant's trial counsel cannot be ineffective for failing to raise a meritless objection. *See* Attachment 2; *see also Raleigh v. State*, 932 So. 2d l054, 1064 (Fla. 2006). Medical records are admissible under the business records exception to the hearsay rule, and the trustworthiness of such records is presumed.  *See Love v. Garcia*, 634 So. 2d 158, 159-60 (Fla. 1994). The Court's confidence in the outcome of this matter has not been undermined by any of Defendant's claims under this ground.

(Respondent's Ex. 27, pp. 11-12) (footnote omitted).

The Certification of Business Record indicated that a records custodian from BMC authenticated the records (CT scan and radiology report regarding the scan) from BMC (Respondent's Ex. 43, p. 1).   The report indicated that a CT scan was performed on Walton on August 16, 2008, at 2:37 p.m. (*Id.*, p. 2).   Records from MMH provided by Petitioner show that a CT scan was performed on Walton on the morning of August 16, 2008 (Doc. 34-1, p. 3).   It therefore appears from the medical records that Walton had two CT scans: the first at MMH, and the second at BMC.   This is consistent with Walton's testimony to the extent that he testified that after he was stabbed by Petitioner on the night of August 15, 2008, his wife took him to MMH, where he remained until he was taken by ambulance to BMC on the morning of August 16, 2008 (Respondent's Ex. 2, Vol. I, pp. 52-55).

Petitioner implicitly argues that Walton had only one CT scan, and the scan was performed at MMH, because Walton testified that his "x-rays" were taken at MMH, and "[t]hey just had my x-rays there at Bayfront."   (*Id.*, pp. 56-57).   However, it is not clear that Walton was referring to the CT scan(s) when he testified about "x-rays."   Moreover, it is possible that Walton failed to recall, more than a year after he went to the hospitals, that he had a second CT scan at BMC.   Therefore, considering both Walton's testimony and the medical records, the state post-conviction court's determination that Petitioner's attorney was not deficient in failing to object to the CT scan on the ground that the incorrect custodian authenticated it was not objectively unreasonable.

Even if Petitioner's attorney was deficient, Petitioner has not shown a reasonable probability of a different outcome but for his attorney's failure to object to the CT scan. Petitioner asserts no objection to the radiology report from BMC that was entered into evidence. That report established that Walton had a broken jaw (Respondent's Ex. 43, p. 2).   Moreover,

Walton testified that Petitioner stabbed him with a sword, he spent multiple days in the hospital as a result of his injury, and he continued to have pain from the injury more than a year later. Finally, there were photographs of Walton's face after he was stabbed (Respondent's Ex. 2, Vol. I, transcript pp. 52-58).   Accordingly, there was substantial evidence other that the CT scan images that supported the State's position that Walton was stabbed with a sword.

Petitioner has failed to demonstrate that the state court unreasonably applied federal law or made an unreasonable determination of the facts.   Accordingly, Ground Four does not warrant federal habeas relief.

**Ground Five:**          **Ineffective assistance of trial counsel.   Failure to make a Confrontation Clause objection pursuant to Crawford v. Washington to the introduction of medical records, radiological report and CT images introduced as evidence during the trial, without the declarant being present.**

Petitioner contends that his rights under the Confrontation Clause were violated when Walton's medical records were entered into evidence without Petitioner having the opportunity to question the doctors who created the records (because Petitioner's attorney never deposed them) or cross-examine them at trial regarding the information in the records (because they were not called to testify).

This claim was raised in state court in Ground 6 of Petitioner's December 7, 2012 Rule 3.850 motion (Respondent's Ex. 21, pp. 12-14).   In denying the claim, the state post-conviction court stated:

> In Ground 6, Defendant once again alleges that his counsel was ineffective for failing to object to the introduction of the victim's medical records, radiological report, and CT images.   Specifically, Defendant claims that the introduction of such evidence violated the confrontation clause of the United States Constitution.   Defendant argues that the physician or other medical personnel were not called to testify at trial; therefore, he was unable to cross

examine them.   He also states that the prosecutor used the medical records to dispute Defendant's claim that he did not use a sword in the attack.

The United States Supreme Court, in *Crawford v. Washington*, held that the confrontation clause applies to both in court statements and out of court testimonial statements.   The *Crawford* Court went on to say that "testimonial" hearsay was inadmissible if the defendant had not been afforded an opportunity to cross-examine the declarant. However, the prosecution's use of "nontestimonial" hearsay was not so restricted by *Crawford*. The *Crawford* Court specifically excluded business records from the definition of "testimonial" hearsay, stating that most hearsay exceptions cover "statements that by their nature [are] not testimonial-for example, business records."

Medical records are consistently deemed business records that fall under the business records hearsay exception provided for in Fla. Stat. §90.803(6)(a). Therefore, Defendant's confrontation rights were not violated by the admission of such non-testimonial medical evidence, and his counsel was not ineffective for failing to object to the evidence on the ground that it violated the confrontation clause. Counsel cannot be ineffective for failing to raise a meritless objection, so this claim is denied.

(Respondent's Ex. 26, pp. 6-7) (footnotes omitted).

The state post-conviction court's determination that defense counsel was not deficient in failing to argue that introduction of the medical records violated the Confrontation Clause was not objectively unreasonable.   The Confrontation Clause of the Sixth Amendment bars admission of testimonial statements of a witness who does not appear at trial unless he is unavailable to testify, and the defendant has had a prior opportunity for cross-examination.   *Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)).   To the extent that Petitioner challenges Walton's statements that he was the victim of a "physical assault," and the assailant was "Jose Torres" (*see* Doc. 35, pp. 16-17), those statements were in the MMH report (*see* Doc. 34-1), which was not presented at trial.   Although the report from BMC was entered into evidence, it included no statement from Walton that he was

assaulted by Petitioner (Respondent's Ex. 43, p. 2). And even if the MMH report was introduced at trial, Walton's statements therein were not barred by the Confrontation Clause because he testified at trial. *See, Crawford*, 541 U.S. at 59 n. 9 ("when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements"). Moreover, "statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules. . . ." *Giles v. California*, 554 U.S. 353, 376 (2008).

To the extent Petitioner challenges the physicians' findings in the radiology reports, those "statements" are not "testimonial." Rather, they are non-testimonial treatment records that did not implicate the Confrontation Clause. *See Melendez-Diaz v. Mass.*, 557 U.S. 305, 312 n.2 (2009) ("medical reports created for treatment purposes. . .would not be testimonial. . ."). Therefore, Petitioner's attorney did not render deficient performance in not objecting to the medical records under the Confrontation Clause.

Petitioner has failed to demonstrate that the state court unreasonably applied federal law in denying this ineffective assistance of counsel claim. Accordingly, Ground Five does not warrant federal habeas relief.

**Ground Six:** **Ineffective assistance of counsel. Failure to move for a mistrial or curative instructions.**

Petitioner contends that his attorney was ineffective in failing to object, move for a mistrial, or request a curative instruction when during closing argument the prosecutor inferred that the ring Petitioner testified that he was wearing when he punched Walton in the face (rather than stabbing him with a sword) was a "deadly weapon" that could satisfy the "deadly weapon element" of the charge of aggravated battery with a deadly weapon. He argues that the

prosecutor's statements were improper and denied him due process because the Information specifically alleged that the deadly weapon was a sword and did not indicate that the weapon was a ring. The statements Petitioner claims were improper are "[e]ven if you take [Petitioner] at his word that he was wearing a ring. . .this is the damage that it caused" (*see* Respondent's Ex. 2, Vol. IV, p. 391), and "I don't care if it was a sword or a ring, [Petitioner] is guilty of aggravated battery." (*Id.*, p. 438).

A portion of this claim was raised in state court in Ground 8 of Petitioner's December 14, 2012 Rule 3.850 motion (Respondent's Ex. 21, pp. 17-18). There, Petitioner alleged that his attorney was ineffective in failing to challenge only the prosecutor's statement that "[e]ven if you take [Petitioner] at his word that he was wearing a ring. . .this is the damage that it caused" (*Id.*). He did not allege that his attorney should have objected, moved for a mistrial, or asked for a curative instruction when the prosecutor stated, "I don't care if it was a sword or a ring, [Petitioner] is guilty of aggravated battery." (*Id.*).

In denying the claim that was presented, the state post-conviction court stated:

> Next, Defendant states that his counsel was ineffective for failing to move for a mistrial after the State made certain comments during its closing arguments regarding use of a ring as a deadly weapon. Specifically, the State summarized Defendant's testimony that he was wearing a ring during the altercation, and Defendant alleged that the ring caused the injuries, not a sword.

> The Florida Supreme Court has held that "an attorney's role in closing arguments is to simply assist the jury in analyzing, evaluating, and applying the evidence, including the attorney's suggestions as to what conclusions can be drawn from the evidence." Thus, it is proper, during closing arguments, to summarize the evidence presented at trial. At the time the prosecutor made this argument, defense counsel objected. That objection prevented the State from making further arguments or inferences based on the Defendant's previous testimony.

> Until defense counsel's objection, the State only summarized what the Defendant himself testified to (that the Defendant hit the victim while wearing a

ring, which caused the injuries, not a sword). The record shows that Defendant claims he was wearing a ring the night he punched the victim, and that the ring was raised in some manner. Therefore, defense counsel's performance was not deficient because he objected to the State's closing argument, and up to that point in its closing argument, the State had only summarized Defendant's own testimony. Defense counsel was not deficient in failing to move for a mistrial because the statements made by the State up until that point were not improper. Moreover, Defendant has not established that he was prejudiced by defense counsel's failure to move for a curative instruction. For these reasons, Defendant's claim under this ground will be denied.

(Respondent's Ex. 26, pp. 8-9).

The state post-conviction court's determination that Petitioner's attorney was not deficient is not objectively unreasonable. The prosecutor's statement "[e]ven if you take [Petitioner] at his word that he was wearing a ring. . .this is the damage that it caused" accurately reflected Petitioner's testimony that he was wearing a ring when he punched Walton in the face (*see* Respondent's Ex. 2, Vol. III, p. 350-51, 354). Accordingly, there was nothing improper about the statement that Petitioner testified he was wearing a ring. *See Braddy v. State*, 111 So. 3d 810, 840 (Fla. 2012) (comments made during closing that "merely summarize[ ] the evidence introduced at trial" are not improper). And to the extent that the prosecutor's statement indicated that the ring caused Walton's injury, Petitioner's attorney objected to the statement, argued that there was no medical evidence that indicated Walton's injury was caused by Petitioner, and the trial court directed the prosecutor to "refrain" from arguing that Walton's injury was caused by Petitioner (Respondent's Ex. 2, Vol. IV, pp. 391-93). Accordingly, Petitioner's attorney did not render deficient performance concerning this statement.

With regard to Petitioner's claim that his attorney was ineffective in failing to object, move for a mistrial, or request a curative instruction when the prosecutor said, "I don't care if it was a sword or a ring, [Petitioner] is guilty of aggravated battery[,]" the claim is procedurally

24

barred because Petitioner failed to fairly present the claim to the state courts.[6]   In his Rule 3.850

motion, Petitioner made no reference to this statement (*see* Respondent's Ex. 21, pp. 17-18).

Rather, he referred solely to the prosecutor's statement "[e]ven if you take [Petitioner] at his

word that he was wearing a ring. . .this is the damage that it caused" and cited solely to the page

of the trial transcript ("TT. 391") that included that statement (*Id.*).   Relying on Petitioner's

allegations, the state post-conviction court found the statement "[e]ven if you take [Petitioner] at

his word that he was wearing a ring. . .this is the damage that it caused" was not improper and

denied the claim (Respondent's Ex. 26, pp. 8-9).

To exhaust a claim, a Petitioner must "present the state courts with the same claim he

urges upon the federal courts."   *Picard v. Connor*, 404 U.S. 270, 275 (1971).   Here, Petitioner

failed to present the same claim he raises in Ground Six to the state courts, at least with respect

to his claim that his attorney was ineffective in failing to challenge the prosecutor's statement "I

don't care if it was a sword or a ring, [Petitioner] is guilty of aggravated battery."   Because

Petitioner has failed to show cause for his default and has failed to make a colorable showing of

actual innocence, this portion of Ground Six is procedurally barred from review.

Even if the claim were not procedurally barred it would fail on the merits.   To obtain

relief, Petitioner must show that an improper comment prejudiced his substantial rights.   *Sexton

v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995).   "A defendant's substantial rights are

prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome

---

[6] 28 U.S.C. §2254(b)(3) states that "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." Here, the State did not expressly waive the exhaustion requirement with regard to Petitioner's challenge to the prosecutor's comment "I don't care if it was a sword or a ring, [Petitioner] is guilty of aggravated battery" because the State referred solely to Petitioner's challenge to the prosecutor's statement "[e]ven if you take [Petitioner] at his word that he was wearing a ring. . .this is the damage that it caused" when stating Petitioner had exhausted the claim in state court (Doc. 22, p. 19).

[of the trial] would be different."   *United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995)

(citing *Kennedy v. Dugger*, 933 F.2d 905, 914 (11th Cir. 1991)).   *See also, Darden v.*

*Wainwright*, 477 U.S. 168, 181 (1986) (on habeas review, "[t]he relevant question is whether the

prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a

denial of due process.'") (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)); *Tucker v.*

*Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc) ("If a reviewing court is confident that,

absent the improper remarks, the jury's decision would have been no different, the proceeding

cannot be said to have been fundamentally unfair.").

Even assuming the prosecutor's statement was improper, Petitioner still would not be

entitled to relief.   The State presented significant evidence that Petitioner stabbed Walton with a

sword, including Walton's testimony that he was stabbed with a sword (Respondent's Ex. 2, Vol.

I, p. 48), Deputy Bocchino's testimony that (1) when he arrived at the scene Petitioner's

daughter, Rebecca Torres, yelled that Petitioner "just stabbed [Walton]" (Respondent's Ex. 2,

Vol. II, p. 198), and (2) he found a "sheathe or a cover to a sword" just outside of the doorway to

Petitioner's home (*Id.*, p. 206), and Petitioner's daughter and wife's affidavits, prepared and

signed on the day of the incident, stating that Petitioner stabbed Walton with a sword (*Id.*, p. 121;

Respondent's Ex. 2, Vol. III, pp. 245-46).   Considering the prosecutor's solitary statement in the

context of the evidence presented and the trial as a whole, Petitioner fails to show that the

statement so infected the trial with unfairness as to make the resulting conviction a denial of due

process.   *See, Darden*, 477 U.S. at 181.

Petitioner has failed to demonstrate that the state post-conviction court unreasonably

applied federal law in denying the ineffective assistance of counsel claim that was presented to it.

And Petitioner has failed to demonstrate prejudice with regard to either claim asserted in Ground

Six.   Accordingly, Ground Six does not warrant federal habeas relief.

**Ground Seven:**     **Ineffective assistance of appellate [sic] counsel.   Trial counsel failed to object to the prosecutor's improper questioning of defense witness Torance Calhoun's prior arrest record and nature of offense(s).**

Petitioner contends that his attorney was ineffective during the State's cross-examination

of Torance Calhoun in failing to object when the prosecutor improperly impeached Calhoun by

questioning him regarding the nature of his prior convictions.   Petitioner argues that the proper

method of impeachment under Florida law was to introduce certified copies of Calhoun's

convictions.   He asserts that the improper questions were prejudicial because Calhoun's

credibility was damaged when the jury heard the nature of his prior convictions.

This claim was raised in state court in Ground 10 of Petitioner's December 7, 2012 Rule

3.850 motion (Respondent's Ex. 21, pp. 19-21).   In denying the claim, the state post-conviction

court stated:

> In Ground 10, Defendant states that his counsel was ineffective because he failed to object when the prosecutor, during the cross-examination of defense witness Torance Calhoun, elicited specific testimony of Mr. Calhoun's criminal record.    The prosecutor mentioned the nature of each of Mr. Calhoun's convictions and the year that they occurred, prompting Mr. Calhoun to inquire whether he was on trial. Defendant further alleges that such cross-examination of Mr. Calhoun "was highly prejudicial because the case came down to the credibility of the witnesses."
>
> A party may attack the credibility of any witness by evidence of a prior felony conviction, but typically, unless the witness answers untruthfully about their [sic] prior convictions, this inquiry is generally restricted to the existence of prior convictions and the number of convictions. *See* Fla. Stat. § 90.610; *see also* Fotopoulos v. State, 608 So. 2d 784 (Fla. 1992) (citing Fulton v. State, 335 So. 2d 280 (Fla.1976); McArthur v. Cook, 99 So. 2d 565 (Fla. 1957); Leonard v. State, 386 So. 2d 51, 52 (Fla. 2d DCA   1980). "An exception to the general rule exists when a defendant engages in "spin control" by characterizing the prior convictions in a way favorable to his case at trial. Under those narrow circumstances, where a defendant has so opened the door, the state is entitled to

inquire further regarding the convictions to attempt to dispel any misleading impression." <u>Rogers v. State</u>, 964 So. 2d 221, 223 (Fla. 4th DCA 2007).

      In its Response, the State points out several incidences where defense witness Torance Calhoun opened the door and invited the State's cross-examination concerning specifics of his prior convictions by making misleading statements about the nature and timing of his prior convictions. The Court incorporates by reference the State's Response as to this ground and agrees that Mr. Calhoun engaged in "spin control" and attempted to mislead the jury concerning his prior convictions. As such, he invited the cross-examination questions of which Defendant now complains, and even if Defendant's counsel had objected to the State's complained of cross-examination questions, the Court most likely would have overruled the objection. Counsel cannot be ineffective for failing to raise a meritless objection. *See* <u>Raleigh v. State</u>, 932 So. 2d 1054, 1064 (Fla. 2006). Based on the foregoing, this claim will also be denied.

(Respondent's Ex. 27, pp. 13-14).

      Initially, to the extent that Petitioner now contends that his attorney failed to object to the prosecutor's questions because under Florida law the appropriate method to impeach Calhoun was to introduce certified copies of his criminal record, the claim is procedurally barred from review in this Court because he procedurally defaulted the claim by failing to raise it in his Rule 3.850 motion (*See* Respondent's Ex. 21, pp. 19-21).   Although he raised the argument in his Initial Brief on appeal (*see* Respondent's Ex. 28, pp. 26-30), it was procedurally barred from review because Florida law prohibits raising a claim for the first time on appeal.   *See Doyle v. State*, 526 So. 2d 909, 911 (Fla. 1988) (ruling that claim was procedurally barred from review "because it was not presented to the trial court in [the] rule 3.850 motion and cannot be raised for the first time in this appeal.").   Petitioner has failed to show cause for the default or that he is actually innocent of the crime for which he was convicted.   Therefore, this part of the claim is procedurally barred.

      To the extent Petitioner contends that his attorney should have objected when the prosecutor asked Calhoun about the nature of his prior convictions, the state court has answered

the question of what would have happened had Petitioner's attorney objected—the objection would have been overruled.   Although in Florida impeachment by prior convictions generally is "restricted to determining if the witness has previously been convicted of a crime, and if so, how  many times[,]. . .[a]n exception to the general rule exists when a [witness] engages in 'spin control' by characterizing the prior convictions in a way favorable to [the defendant's] case at trial.   Under those narrow circumstances, where a [witness] has so opened the door, the state is entitled to inquire further regarding the convictions to dispel any misleading impression." *Rogers v. State*, 964 So. 2d 221, 222-23 (Fla. 4th DCA 2007).   *See also Baker v. State*, 102 So.3d 756, 759 (Fla. 4th DCA 2012) ("When a defendant tries to characterize his or her prior convictions in a favorable light at trial, the defendant is considered to have 'opened the door' and the state is 'entitled to inquire further regarding the convictions to attempt to dispel any misleading impression.'") (quoting *Rogers*, 964 So.2d at 223).

When Calhoun testified that he had not been in jail for a "long time" and that he had not "been to jail *for nothing but child support in the last ten years or so*" (Respondent's Ex. 2, Vol. III, p. 287) (emphasis added), he opened the door to the dates of convictions in, and the nature of, his prior offenses.   *See, e.g., Farr v. State*, 230 So. 3d 30, 34 (Fla. 4th DCA 2017). Moreover, when Calhoun attempted to create the impression that he really had not committed a grand theft in 2000 because his employer "didn't pay [him]" (*see* Respondent's Ex. 2, Vol. III, p. 293), he opened the door to the nature of his prior offenses, all but one of which were thefts and burglaries (*See id*., p. 294).   Accordingly, Petitioner's attorney did not render deficient performance in failing to object to the prosecutor questioning Calhoun regarding the dates and nature of his prior convictions.

Petitioner has failed to demonstrate that the state court unreasonably applied federal law or made an unreasonable determination of the facts in denying this claim. Accordingly, Ground Seven does not warrant federal habeas relief.

**Ground Eight:** **Ineffective assistance of counsel. Trial counsel agreed to improper jury instructions which shifted the burden of proof to the defendant.**

Petitioner contends that his attorney was ineffective in failing to object to improper jury instructions that shifted the burden to Petitioner to prove beyond a reasonable doubt that Walton committed a burglary with a battery before Petitioner was justified in using deadly force to defend himself or his home. This claim was raised in state court in both Ground 12 of Petitioner's December 7, 2012 Rule 3.850 motion (Respondent's Ex. 21, pp. 23-27), and on direct appeal (Respondent's Ex. 5).[7] In denying the claim, the state post-conviction court stated:

> In his final ground, Defendant states that his counsel was ineffective for failing to object to the jury instructions. Specifically, Defendant states that the jury instructions required the jury to find the victim "actually committed the completed acts of both burglary and battery" before they could find that Defendant was justified in the use of deadly force. Defendant maintains, "These instructions shifted the burden of proof to Defendant to prove that his force was justified."

> The jury instructions state that the justifiable use of deadly force is permitted if Defendant reasonably believes that force is necessary to prevent imminent death or great bodily harm while resisting an attempt to commit burglary with battery upon him. The instructions go on to say that Defendant is justified in using deadly force if he reasonably believes that such force is necessary to prevent the imminent commission of burglary with battery against himself or another. This jury instruction makes it clear that the justifiable use of deadly force is based upon Defendant's reasonable belief. The jury instructions go on to state the various elements of burglary and battery, each of which state that they must be proven beyond a reasonable doubt.

---

[7] In Florida, "an appellate court may review an ineffective assistance of counsel claim on direct appeal when the claimed ineffectiveness is apparent on the face of the record." *Kidd v. State*, 978 So. 2d 868, 869 (Fla. 4th DCA 2008).

According to the State, Defendant raised this issue of burden shifting in his direct appeal, yet his conviction was affirmed without comment. The State further notes, "The only indication of burden shifting was in the definition of the elements of the crime of burglary with a battery which was alleged as the forcible felony the victim was committing that would have justified the use of deadly force against him." More importantly, Defendant's trial counsel "properly explained the burden during his closing argument," by stating, "[I]t's up to the State to prove that if - even if Mr. Torres caused that injury, he did not do it in self-defense, because that's also the State's burden. They have to prove it didn't happen in self-defense." The State further observes: "The jury instruction error was not a fundamental error. The error was not repeated or improperly argued during the closing arguments. The jury instruction containing the error was not implicated by either theory of the case." Having reviewed the trial transcript in its entirety, the Court agrees with the State on this ground as well. Once again, the Defendant has failed to establish a <u>Strickland</u> standard of prejudice, and this claim will likewise be denied.

(Respondent's Ex. 27, pp. 14-15) (footnotes omitted).[8]

Petitioner fails to identify, in either his second amended petition or his reply, the allegedly defective jury instructions. It appears from the record, however, that he takes issue with the state trial court's instructions on justifiable use of deadly force and burglary, which stated:

3.6(f) justifiable use of deadly force. An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense -- it is a defense to the offense with which Jose A. Torres, Sr. is charged if the injury to Ricky Walton resulted from the justifiable use of deadly force. Deadly force means force likely to cause death or great bodily harm.

The use of deadly force is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting. [sic]

(1) another's attempt to murder him, or;

(2) any attempt to commit burglary with battery upon him or;

(3) any attempt to commit burglary with battery upon or in any dwelling

---

[8] On direct appeal, the appellate court affirmed Petitioner's conviction and sentence without a written opinion (Respondent's Ex. 8).

occupied by him.

A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent. [sic]

(1)  imminent death or great bodily harm to himself or another or;

(2)  the imminent commission of burglary with battery against himself or another.

In deciding whether the defendant was justified in the use of deadly force you must judge him by the circumstances by which he was surrounded at the time the force was used.   The danger facing the defendant need not have been actual, however to justify the use of deadly force the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force.

Based upon appearances the defendant must have actually believed that the danger was real.   If the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself another or to prevent the commission of a forcible felony.

If the defendant was in a dwelling where he had a right to be, he is presumed to have had a reasonable fear of imminent death or great bodily harm to himself or another, if Ricky Walton had unlawfully and forcibly entered, removed or attempted to remove another person against the person's will from that dwelling and the defendant had reason to believe that had occurred.

The defendant had no duty to retreat under such circumstances.   A person who unlawfully and by force enters or attempts to enter another's dwelling is presumed to be doing so with the intent to commit an unlawful act, involving force or violence.

As used with regard to self-defense, dwelling means a building or conveyance of any kind, including any attached porch, whether the building or conveyance is temporary or permanent, or mobile or immobile, which has a roof on it, including a tent, and is designed to be occupied by people lodging therein at night.

In considering the issue of self-defense you may take into account the relative physical abilities and capacities of the defendant and Ricky Walton.   If in

your consideration of the issue of self-defense you have a reasonable doubt on the question of whether the defendant was justified in the use of deadly force, you should find the defendant not guilty. However, if from the evidence you are convinced that the defendant was not justified in the use of deadly force, you should find him guilty if all the elements of the charge have been proved.

13.1, Burglary, Florida Statutes 810.02. To prove the crime of burglary the following three elements must be proven beyond a reasonable doubt:

(1) Ricky Walton entered a structure owned by or in the possession of Jose A. Torres, Sr.

(2) At the time of entering the structure Ricky Walton had the intent to commit an offense in that structure.

(3) Ricky Walton was not invited to enter the structure. The premises were not open to the public at the time of the entering.

If the invitation to enter was obtained by Ricky Walton, by trick or fraud or deceit, then the invitation to enter was not valid.

You may infer that Ricky Walton had the intent to commit a crime inside a structure if the entering of the structure was done stealthily and without consent of the owner or occupant.

The intent with which an act is done is an operation of the mind, and therefore is not always capable of direct and positive proof. It may be established by circumstantial evidence like any other fact in a case.

Even though an unlawful entering of a structure is proved, if the evidence does not establish that it was done with the intent to commit an offense, Ricky Walton would not -- would not be guilty of burglary.

Structure means any building of any kind either temporary or permanent that has a roof over it and an enclosed space of ground and outbuildings immediately surrounding the structure.

If you find Ricky Walton committed a burglary, you must also determine if it has been proven beyond a reasonable doubt whether in the course of committing the burglary Ricky Walton battered any person. A battery is an actual and intentional touching or striking of another person against that person's will or the intentional causing of bodily harm to another person.

(Respondent's Ex. 2, Vol. IV, pp. 442-46).

Considering these instructions, and the trial record in its entirety, the state post-conviction court's determination that Petitioner failed to demonstrate prejudice is not objectively unreasonable. With respect to Petitioner's contention that the instructions improperly shifted the burden of proof to him to prove his force was justified, the Court has reviewed the instructions in this case as a whole and finds that the State clearly retained the burden of proof. Although the instructions stated that Petitioner was justified in using deadly force if he reasonably believed that the force was necessary to prevent "the imminent commission of burglary with battery against himself or another," and that the jury was required to find that Walton committed a burglary and a battery "beyond a reasonable doubt," the jury was never instructed that it was Petitioner's burden to prove anything. To the contrary, the jury was instructed, in pertinent part, that (1) it was the State's burden to prove beyond a reasonable doubt that Petitioner committed either aggravated battery or battery (Respondent's Ex. 2, Vol. IV, pp. 441-42, 449), (2) Petitioner acted in self-defense and should be found not guilty if he reasonably believed that the force was necessary to prevent imminent death or great bodily harm to himself while resisting any attempt to commit burglary with battery (*id.*, pp. 442-45), (3) Petitioner enjoyed a presumption of innocence that could be overcome only by "evidence to the exclusion of and beyond a reasonable doubt" (*id.*, p. 449), and (4) Petitioner was "not required to present evidence or prove anything." (*Id.*, p. 450). Moreover, during closing arguments Petitioner's attorney informed the jury that it was the State's burden "to prove it didn't happen in self-defense." (*Id.*, p. 419). Accordingly, Petitioner is not entitled to relief on his claim that the jury instructions impermissibly shifted to him the burden to prove he acted in self-defense.

Petitioner likewise is entitled to no relief with regard to his contention that his attorney was ineffective in failing to object to the instructions because they improperly required the jury to find that Walton committed both a burglary and a battery before Petitioner was entitled to use deadly force. To prove ineffective assistance of counsel for failing to object to a jury instruction, the Petitioner must show that the instruction was improper; that a reasonably competent attorney would have objected to the instruction; and that the failure to object was prejudicial. *Daugherty v. Dugger*, 839 F.2d 1426, 1428 (11th Cir.1988) (citing *Strickland*, 466 U.S. at 686–87). Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* It is not enough for the Petitioner to show that the error had some conceivable effect on the outcome of the proceeding. *Id.* at 693. Rather, he must show that the result would have been different. *See id.*

Petitioner has failed to show a reasonable probability that the result of his trial would have been different had his attorney objected to the instructions. Although the instructions set out the elements of burglary and battery and stated that if the jury found Walton had committed a burglary they were required to further find that Walton committed a battery, the jury was not instructed that it could find Petitioner acted in self-defense only if it was proven beyond a reasonable doubt that Walton was committing a burglary and a battery against him when he used deadly force. Rather, the jury instructions stated that the justifiable use of deadly force was based on Petitioner's reasonable belief that Walton was committing a burglary with a battery. Moreover,

35

when Petitioner challenged these instructions and asserted that his attorney was ineffective in failing to object to them on direct appeal (Respondent's Ex. 5), the appellate court affirmed without discussion (Respondent's Ex. 8).   Therefore, even if Petitioner's attorney had objected to the instructions, the objection likely would have been denied.   Finally, even if the challenged instructions had been removed, there is no reasonable probability of a different outcome, considering the substantial evidence (as detailed above) that Petitioner used a sword to stab Walton.

Petitioner has failed to demonstrate that the state courts unreasonably applied federal law or made an unreasonable determination of the facts in denying this claim.   Accordingly, Ground Eight does not warrant federal habeas relief.

**Ground Nine:** **Ineffective assistance of counsel.   Trial counsel failed to prepare my defense witness for trial.**

Petitioner contends that his attorney was ineffective in failing to prepare defense witness Calhoun for cross-examination at trial.   He opines that since his attorney knew Calhoun had a prior criminal history, Calhoun should have been instructed to "answer all questions truthfully and not offer any other information or explaination [sic] that would open the door to further interrogation from the state prosecutor[,]" and warned that if he "opened the door. . .it might damage his creditbility [sic].   . . ."   (Doc. 16, p. 21).   He argues that because his "case rested on credibility, . . .the impeachment of [Calhoun] was prejudicial to [his] case and contributed to [his] conviction."   (Doc. 35, p. 24).

Petitioner acknowledges that this claim was not exhausted in the state courts but asserts entitlement to federal review under *Martinez v. Ryan*, 566 U.S. 1 (2012).   Respondent correctly argues both that this ground is unexhausted and procedurally barred because the claim was not

raised in state court and that *Martinez* does not apply to overcome the default of this claim (Doc. 22, p. 26).

*Martinez* recognizes a narrow exception to the exhaustion requirement announced in *Coleman v. Thompson*, 501 U.S. 722 (1991), regarding claims of ineffective assistance of trial counsel. *Martinez* holds that, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17. A claim that lacks merit or is wholly without factual support is not "substantial." *See id*. at 15-16; *see also Allen v. Sec'y, Dep't of Corr.*, 767 F. App'x 786, 790 (11th Cir. 2019) ("[T]o show that an underlying claim is substantial, the petitioner must show that reasonable jurists would debate its merits.") (citing *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269–70 (11th Cir. 2014)).

Petitioner fails to show that his claim of ineffective assistance of counsel is "substantial." The claim lacks merit because it is vague, conclusory, and self-serving. Although Petitioner alleges that his attorney failed to prepare Calhoun for cross-examination, he fails to present any specific facts to support that allegation. He does not specify whether his attorney met with Calhoun but failed to prepare for possible cross-examination regarding Calhoun's criminal history, or never met with Calhoun at all. Nor has Petitioner provided an affidavit, either his own or from Calhoun, that presents specific facts showing Petitioner's attorney failed to prepare Calhoun for cross-examination. It is apparent that Calhoun was prepared, at least to some degree, to discuss his criminal history because on direct examination he accurately responded to questions regarding his history (*See* Respondent's Ex. 2, Vol. III, p. 275). Without supporting

evidence or specific factual allegations, Petitioner's assertion that counsel failed to adequately prepare Calhoun for cross-examination is pure speculation.[9]   Vague, conclusory, speculative, or unsupported claims are insufficient to support claims of ineffective assistance of counsel.   *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.1991), *cert. denied*, 502 U.S. 1105 (1992).

Petitioner fails to establish that his claim is "substantial" under *Martinez* to overcome the procedural default of this ground of ineffective assistance of counsel.   He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent.   *Schlup v. Delo*, 513 U.S. 298, 327 (1995).   Because Petitioner satisfies neither exception to procedural default, Ground Nine is procedurally barred from federal review.

**Ground Ten:**          **Ineffective assistance of trial counsel.   Trial counsel failed to file a motion to dismiss the fundamentally defective charging information.**

Petitioner alleges that the Information was defective because it failed to charge a crime under Florida law, since it omitted an element of battery, namely, that Walton was touched without his consent.   He contends that his attorney was therefore ineffective in failing to move to dismiss the Information.   He argues that he was prejudiced because had the Information been dismissed and refiled, he then would have had the opportunity to file a timely motion for immunity under Florida's "Stand Your Ground" law.

This claim fails *Strickland*'s prejudice prong.   As discussed above in Ground One, the state court determined that a timely motion to dismiss the charge based on Florida's "Stand Your Ground" statute would have been denied.   Petitioner therefore has failed to demonstrate that his

---

[9] Without specific allegations, it is as likely that Petitioner's attorney adequately prepared Calhoun for

attorney's failure to move to dismiss the Information prejudiced him in any way.[10] Consequently, Petitioner fails to establish that his claim is "substantial" under *Martinez* to overcome the procedural default of this ground of ineffective assistance of counsel. He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Petitioner satisfies neither exception to procedural default, Ground Ten is procedurally barred from federal review.

**Ground Eleven:** **Ineffective assistance of counse [sic] and/or a violation of Article VI of the U.S. Constitution. Trial counsel failed to object or file writ of quo warrento [sic] to challenge the judges [sic] authority.**

Petitioner alleges that although Judge Riva was initially appointed to his case, the case was reassigned to a "recently elected" judge, Gilbert A. Smith, Jr., shortly before trial. Judge Smith, according to Petitioner, presided over the trial despite not having taken an oath of office. Petitioner contends that Judge Smith's failure to take his oath of office prior to the conclusion of the trial and before entering the judgement in his case violated Article VI of the United States Constitution, rendered his trial "invalid," and deprived him of due process. He further contends that his attorney was ineffective in failing to investigate why Petitioner's case was reassigned to Judge Smith and whether Judge Smith was "qualified since he was newly elected." (Doc. 16, p. 24). He opines that because Judge Smith was "newly elected," his attorney should have investigated whether Judge Smith had taken his oath of office and filed a petition for a writ of quo warranto challenging Judge Smith's authority to preside over his case.

---

cross-examination, but Calhoun nonetheless tried to minimize his criminal history in front of the jury.

[10] Had the Information been dismissed, the trial court would have allowed the State the opportunity to correct and refile the Information. Once the State refiled the Information with the missing element, Petitioner would have faced the same charge, and there is no reasonable basis for believing the outcome would have been different. *See* Fla. R.Crim. P. 3.140(j) ("An information on which the defendant is to be tried that charges an offense may be amended on the motion of the prosecuting attorney or defendant at any time prior to trial because of formal defects."); 3.190(e) ("If the motion to dismiss is sustained, the court may order that the defendant be held in custody or

Petitioner identifies no authority, and this Court is not aware of any authority, that supports his claim that a state circuit court judge's failure to file an oath of office before presiding over a trial and entering a judgment in the case violates due process and renders the judgment void.   Moreover, under Florida law Judge Smith's alleged failure to comply with the oath of office requirement under Section 876.05, Florida Statutes, does not invalidate his public actions.   *See, Fla. Bar v. Sibley*, 995 So.2d 346, 351 (Fla.2008) ("A de facto officer is one who, while in actual possession of the office, is not holding such in a manner prescribed by law. . .A de facto officer exercising the functions of office in consequence of a known and valid appointment or election may serve if the only defect in title is a failure to comply with some requirement or condition such as executing an oath or doing so in accordance with a prescribed form. . .a de facto officer's acts are as valid and binding upon the public or upon third persons as those of an officer de jure.") (citations, alteration, and quotation marks omitted).   Accordingly, Petitioner's substantive due process claims does not warrant federal habeas relief.

His ineffective assistance of counsel claim likewise warrants no relief because he has failed to demonstrate prejudice.   Even if Petitioner's attorney had investigated whether Judge Smith had taken an oath of office and discovered that Judge Smith had not done so, and then filed a petition for a writ of quo warranto challenging Judge Smith's authority to preside over the case, Petitioner has failed to demonstrate that there was any reasonable probability of a different outcome at trial.   Had it been determined that Judge Smith lacked authority to preside over the trial because he had not taken his oath of office, another judge could have been assigned to the case or Judge Smith could have taken his oath of office before proceeding with the trial.   And to the extent Petitioner may be alleging that his attorney was ineffective in failing to challenge

---

admitted to bail for a reasonable specified time pending the filing of a new indictment or information.").

Petitioner's conviction as "void" because Judge Smith had not executed his oath of office prior to entering the judgment in the case, he cannot show prejudice. Any challenge on that ground would have been denied under Florida's de facto officer doctrine. *See, Sibley*, 995 So. 2d at 351. Accordingly, Ground Eleven does not warrant federal habeas relief.

**Ground Twelve:** **Ineffective assistance of counsel. Trial counsel committed cumulative errors**

Petitioner contends that the cumulative effect of his trial attorney's errors denied him a fair trial. This claim was raised in state court in Petitioner's memorandum of law in support of his December 2012 Rule 3.850 motion (Respondent's Ex. 22, pp. 1-2). In denying the claim, the state post-conviction court stated:

> Finally, in his memorandum of law Defendant raises an additional ground, thereby contending that his counsel's cumulative actions and omissions amount to ineffective assistance of counsel that would "arguably" entitle him to a new trial. This ground is equally without merit because "a claim of cumulative error will not be successful if a petitioner fails to prove any of the individual errors he alleges." *Suggs v. State*, 923 So. 2d 419,441 (Fla. 2005) (citing *Bryan v. State*, 748 So. 2d l003, 1008 (Fla. 1999)). Thus, having found no individual error in the preceding grounds, this Court finds no merit in the Defendant's claim of cumulative error. Therefore, the Court will likewise deny the Defendant's motion as to this ground.

(Respondent's Ex. 27, p. 16).

Considering there is no Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance of counsel, this Court cannot say that the state court's rejection of Petitioner's claim is contrary to or an unreasonable application of clearly established federal law. *See, Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1287-88 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established

federal law."); *Hill v. Davis*, 781 F. App'x 277, 280–81 (5th Cir.), *cert. denied*, 140 S. Ct. 389 (2019) ("The Supreme Court has never squarely held that the cumulative error doctrine governs ineffective assistance of counsel claims.").   Ground Twelve therefore does not warrant federal habeas relief.

Any of Petitioner's claims not addressed in this Order have been found to be without merit.

Accordingly:

1. The Second Amended Petition for Writ of Habeas Corpus (Doc. 16) is **DENIED**.

2. The **Clerk of the Court** shall enter judgment accordingly and close this case.

3. This Court should grant an application for a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[2]   A certificate of appealability is **GRANTED** only on this issue: whether Petitioner is entitled to relief on the ground that his attorney rendered ineffective assistance in failing to object to the jury instructions challenged in Ground Eight of the petition.   A certificate is denied on all other issues.

**ORDERED** in Tampa, Florida on March 23, 2020.

Charlene Edwards Honeywell
United States District Judge

---

[2]Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts,

The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. . . .If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.

SA: sfc
Copies to: Petitioner, *pro se;* Counsel of Record